Benjamin M. Snyder, Jr. v. Commissioner.
Snyder v. Commissioner
Docket No. 15005.
United States Tax Court
1951 Tax Ct. Memo LEXIS 110; 10 T.C.M. (CCH) 833; T.C.M. (RIA) 51265; September 4, 1951
*110 Partnership between father and son recognized as valid for tax purposes. Joshua W. Miles, Esq., First National Bank Bldg., Baltimore, Md., Frank F. Truscott, Esq., and Jerome A. O'Neill, Esq., for the petitioner. W. Morgan Hunter, Esq., for the respondent. TIETJENS
Memorandum Findings of Fact and Opinion TIETJENS, Judge: Respondent determined deficiencies in income tax for 1944 and 1945, in the respective amounts of $10,754.33 and $13,729.11. The sole issue presented is whether, in the years in question, petitioner and his son were partners in a valid and subsisting partnership in a business conducted under the name of U.S. Typewriter Ribbon Mfg. Co., and thus whether respondent erred in taxing to petitioner the entire net income from the business in those years. The stipulated facts are so found and incorporated herein by reference. From the stipulation, exhibits, and testimony adduced we make the following. Findings of Fact Petitioner is an individual residing at 142 Montgomery Avenue, Bala-Cynwyd, Pennsylvania. His individual income tax returns for 1944 and 1945 were filed with the collector for the first district of Pennsylvania at Philadelphia. *111 Benjamin M. Snyder, III., (hereinafter referred to as Ben), is the son of petitioner. Charles R. Palmer, deceased, was petitioner's father-in-law and Ben's grandfather. U.S. Typewriter Ribbon Mfg. Co., (hereinafter referred to as the Company), was established in 1895 as a sole proprietorship by Charles R. Palmer. Its principal business is the manufacture and sale of inked ribbons and carbon paper. Petitioner went to work with the Company in 1915 under an understanding with Mr. Palmer that if both were satisfied at the end of a year petitioner could buy a tenth interest. Such an interest was purchased in 1919 and petitioner added another tenth interest in 1925. A third partner, Edward J. Wright, was taken in in 1925 or 1926. Mr. Palmer retired in 1928 and sold his remaining interest to petitioner. The partnership interests were further adjusted so that about 1928 petitioner had sixty-five per cent and Wright thirty-five per cent of the Company. In 1938 petitioner acquired Wright's interest and continued the business as a sole proprietorship. In 1928 the plant had ten or twelve employees and the Company's sales had dropped to about $33,000 per year. In 1944 and 1945 the Company *112 had as many as 78 employees and its annual sales had grown to an approximate $500,000. The process of manufacturing inked ribbons and carbon paper is a complicated one and during his connection with the Company petitioner has had a substantial share of its management and supervision including the actual operation of machines, purchasing, hiring and firing, selling, borrowing money, etc. Ben was born July 15, 1920. In 1929 his mother died and he went to Florida to live with his grandparents, Mr. and Mrs. Palmer, until he was of high school age. While in high school Ben worked at the Company on occasion, helping the shipper to wrap and pack, did some typing, general office work, and also helped in the factory. After Ben became twenty-one years old he and the petitioner on December 31, 1941, entered into a partnership agreement with reference to the Company. In substance, the agreement provided that the partnership was to continue for ten years with provision for prior termination at the end of any year on notice; that petitioner was to have 60 per cent and Ben 40 per cent of the profits; that all matters relating to salaries of the co-partners should be determined by petitioner; *113 that petitioner would devote all his time to the business while Ben would decide subsequently upon completion of his education how much time he would spend in connection with the business, and that petitioner was empowered to do whatever in his judgment he considered necessary for the best interests of the business. At the time the agreement was signed Ben was a student at the University of North Carolina and was to graduate in June 1943. There he majored in English and was elected to Phi Beta Kappa. He received credit for 60 hours of English, 19 hours of History, and 25 hours of Education. Because of the war Ben's graduation was accelerated to March 1943. In addition, Ben sat in on several courses in Business at the University with the idea that they would aid him in the Company's business. During vacations Ben worked at the Company plant and while at college made calls on customers in the North Carolina area. Prior to executing the agreement Ben had been rejected for military service because of his height, but in March or April 1943 was called to active service in the Air Force. While in service Ben and petitioner corresponded and part of the correspondence concerned the business *114 and its problems. Upon his discharge from the service Ben took graduate work at Harvard University and Wisconsin University under the G. I. Bill of Rights. At Wisconsin he studied Spanish with a view of equipping himself to handle the Company's export business. From September 1946 to September 1948, he took charge of that part of the business which constituted about a fourth of the Company's business and spent full time at this work. At the time the agreement was signed in December 1941 petitioner made a gift of a 40 per cent interest in the business to Ben. A federal gift tax return was filed by petitioner showing this interest to have a value of $32,042.56. The Company's books were adjusted by its auditor to reflect this gift by setting up a capital account in Ben's name and transferring thereto from petitioner's capital account 40 per cent of the balance at the end of 1941. Ben had full control of his interest in the Company and could have drawn from his account at any time. The Company was registered as a partnership under the Pennsylvania Fictitious Names Act; the bank was notified that a partnership had been formed and that Ben was authorized to draw checks on the Company *115 account; creditors were notified of the partnership; leases and insurance policies were changed; a new building was acquired in the names of petitioner and Ben as tenants in partnership; and other things, such as the filing of social security tax returns, were done as a partnership. From 1943 to 1945 sums amounting to approximately $10,000 from Ben's Army pay and amounts received by him from a trust set up by his grandfather were added to the Company assets. The following schedule recapitulates the book debits and credits in the capital, salary, and personal accounts in the names of petitioner and Ben on the books of account of the Company: Petitioner
Ben
Balance per books,
12/31/41
$ 80,106.39 $ Book entry to transfer
(32,042.56)
32,042.56
Balance per books
1/1/42
$ 48,063.83
$ 32,042.56
Allowed as "salaries",
1942-1945
16,589.50
60.00
Book credits of profits
after "salaries", 1942-
1945
102,329.71
68,219.80
Book credits for
"capital contribu-
tions", 1942-1945
10,644.24
$166,981.04
$110,966.60
Income Taxes paid,
1942-1945
(48,589.65)
(17,334.91)
Other personal expendi-
tures, 1942-1945
(34,512.35)
(5,852.80)
Balance per books,
12/31/45
$ 82,879.04
$ 87,778.89
*116 It had always been petitioner's policy to put back into the Company practically everything earned, except what was needed to live on and to finance expansion through borrowing, sometimes from employees and relatives of employees. At one time he was in debt to employees and their relatives for approximately $35,000. Capital was important in the business. For the years 1942 and 1943 respondent determined that petitioner was taxable on the entire income of the Company. Petitioner paid the deficiencies determined in those years, filed a claim, and brought suit in 1943, in Snyder v. Smith, Collector, (Civil No. 7400, U.S.D.C.E.D. Pa. to recover the taxes paid. The case was tried before a jury on October 20, 1948, and resulted in a verdict and judgment for petitioner. Thereafter, respondent noted and then dismissed an appeal. The judgment became final and was paid. The petitioner and Ben, acting in good faith, entered into a valid and subsisting partnership, effective December 31, 1941, for the purpose of conducting business under the name of U.S. Typewriter Ribbon Mfg. Co., which partnership was still in existence during the years 1944 and 1945. Opinion Petitioner strongly urges *117 that we are foreclosed from going again into the question of the validity and existence of the partnership during the years 1944 and 1945 because the verdict and judgment in Snyder v. Smith, Collector, supra, either collaterally estops our re-examination or brings into play the doctrine of res judicata. Notwithstanding this argument, we have gone into the evidence presented by the whole record and have not confined our consideration to the effect of the action in the district court. In so doing we have relied on the decision of this Court in M. M. Argo, 3 T.C. 1120, affirmed 150 Fed. (2d) 67. On the merits, the question is one of fact. Did petitioner and his son really and truly intend to join together as partners for the purpose of carrying on business and sharing in the profits or losses or both? Commissioner v. Culbertson, 337 U.S. 733. The ultimate finding of fact above set forth disposes of the case. In reaching that conclusion we have applied to the stipulation, exhibits, and testimony herein the principles announced in Commissioner v. Culbertson, supra; Commissioner v. Tower, 327 U.S. 280; and Lusthaus v. Commissioner, 327 U.S. 293. *118 The respondent erred in his determination. Decision will be entered for the Petitioner.